# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| AML IP, LLC,<br>    Plaintiff,<br><br>v.<br><br>FIVE STARS LOYALTY INC.<br>    Defendant. | Civil Action No. 6:21-cv-00191<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

AML IP, LLC ("AML") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of 7,177,838 ("the '838 patent") (referred to as the "Patent-in-Suit") by Five Stars Loyalty, Inc. (collectivel;y "Five Stars").

**I.   THE PARTIES**

1.   Plaintiff AML is a Texas Limited Liability Company with its principal place of business located in Harris County, Texas.

2.   On information and belief, Five Stars is a corporation existing under the laws of the State of Delaware, with a principal place of business located at 11801 Domain Blvd Austin, TX 78758. On information and belief, Five Stars sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Five Stars may be served through their registered agent Matthew Doka, 815 Lakeshore Drive, El Paso, TX 79932.

## II.     JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

4. This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).  Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.    INFRINGEMENT

### A. Infringement of the '838 Patent

6. On February 13, 2007, U.S. Patent No. 7,177,838 ("the '838 patent", attached as Exhibit A) entitled "Method and Apparatus for Conducting Electronic Commerce Transactions Using Electronic Tokens" was duly and legally issued by the U.S. Patent and Trademark Office.  AML IP, LLC owns the '838 patent by assignment.

7. The '838 patent relates to a novel and improved methods and apparatuses for conducting electronic commerce.

8. Five Stars maintains, operates, and administers micropayment products and services that facilitate purchases from a vendor at micropayment levels, wherein prices for the products and services are listed in units of electronic tokens that infringes one or more claims of the '838 patent, including one or more of claims 1-28, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '838 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

9. Support for the allegations of infringement may be found in the following preliminary table:

| US7177838 B1 | Five Stars Loyalty |
| --- | --- |

| | |
|---|---|
| 1. A method of conducting electronic commerce over the Internet using micropayments, the method comprising: | <https://www.fivestars.com/><br><br>Five Stars Loyalty has a method of conducting electronic commerce over theInternet using micropayments.<br><br>The reference includes subject matter disclosed by the claims of the patent afterthe priority date. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| opening a user account with a vendor for a user; | **Member Account, Password and Security**: You are responsible for maintaining the confidentiality of your account and are fully responsible for any and all activities that occur under your account. You agree to (a) immediately notify Fivestars of any unauthorized use of your account or any other breach of security, and (b) ensure that you log out of your account at the end of each session. Fivestars will not be liable for any loss or damage arising from your failure to comply with these requirements. Only one account is permitted per person. You agree and represent that you are not currently and will not use or maintain any other Fivestars account under a different phone number. Your account and your rights under this agreement cannot be transferred by you to any party.<br><br><https://www.fivestars.com/legal/><br><br>The reference describes <u>opening a user account with a vendor for a user</u>. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| issuing one or more electronic tokens from the vendor to the user account, wherein no physical manifestation, other than a database entry, of the user account occurs, each electronic token having a value of at least a fraction of a dollar; | Five Stars Loyalty, Inc. ("Fivestars," "we," "us," and/or "our") provides users with the ability to make credit and debit card purchases and earn points and rewards (collectively, "Rewards") from various participating merchants, and/or directly from Fivestars as the case may be, through its point of sale terminal ("Terminal"), website, https://fivestars.com (the "Site"), and mobile and other software applications as available (collectively, the "Service(s)") subject to the following Terms (as amended from time to time, the "Terms") and the Privacy Policy located at https://fivestars.com/privacy. The terms "user," "you," and "your" mean any user of the Service(s).<br><br><https://www.fivestars.com/legal/><br><br>The reference describes issuing one or more electronic tokens from the vendor to the user account, wherein no physical manifestation, other than a database entry, of the user account occurs, each electronic token having a value of at least a fraction of a dollar. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| providing products and services that may be purchased from the vendor at micropayment levels, wherein prices for the products and services are listed in units of electronic tokens; | **Rewards**: By using the Service, you may have the opportunity to qualify for Rewards through promotional campaigns offered by merchants that participate in the Service. All Rewards made available in connection with the Service are promotional only and have no cash value. You have no property value in any Rewards. Such Rewards are made available directly by the relevant merchant providing such Reward ("Rewards Provider"), and not Fivestars, and are redeemable solely for the applicable goods or services of the relevant Rewards Provider as may be determined by such Rewards Provider. The Rewards Provider, not Fivestars, is the provider of the Rewards and such goods and services and is solely responsible for redeeming any Rewards you obtain. Fivestars will have no liability if a Rewards Provider refuses or fails to honor any Reward. In addition, the following terms and conditions also apply to all Rewards:<br><br><https://www.fivestars.com/legal/><br><br>The reference describes providing products and services that may be purchased from the vendor at micropayment levels, wherein prices for the products and services are listed in units of electronic tokens. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| permitting the user to select, at any participating vendor website, a subset of the products and services for purchase from the vendor; | Here's a list of popular reward examples:<br><br>- Double rewards/points<br>- BOGO (buy one, get one free or at a discounted price)<br>- Free upgrade with purchase<br>- Free item with purchase<br>- Particular dollar amount off<br>- Percentage off entire store<br>- Percentage off particular item (e.g., 25% off 1lb of coffee beans)<br>- Discounted items (e.g., $1 pastry)<br>- Deals on a group of items (e.g., 50% off one pastry, sandwich, or soup)<br>- Day of the week deals (e.g., Wednesday only specials)<br><br><https://blog.fivestars.com/create-an-enticing-effective-points-and-rewards-structure/><br><br>The reference describes permitting the user to select, at any participating vendor web site, <u>a subset of the products and services</u>. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| computing at the participating vendor web site a total price for the selected subset of the products and services in units of electronic tokens; | Here's a list of popular reward examples:<br><br>• Double rewards/points<br>• BOGO (buy one, get one free or at a discounted price)<br>• Free upgrade with purchase<br>• Free item with purchase<br>• Particular dollar amount off<br>• Percentage off entire store<br>• Percentage off particular item (e.g., 25% off 1lb of coffee beans)<br>• Discounted items (e.g., $1 pastry)<br>• Deals on a group of items (e.g., 50% off one pastry, sandwich, or soup)<br>• Day of the week deals (e.g., Wednesday only specials)<br><br><https://blog.fivestars.com/create-an-enticing-effective-points-and-rewards-structure/><br><br>The reference describes computing at the participating vendor web site a total price for the selected subset of the products and services in units of electronic tokens. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| authorizing a purchase transaction at the participating vendor website without requiring any third party authentication and a physical manifestation of the user account; and | This gives options to the customer – they can redeem their points at a high frequency for smaller items, or save them up and cash them in for the big, extravagant prizes. One of the better examples of this is credit card reward points. Although there are small variations between the major card companies, the basic premise remains the same – each dollar spent equates to a point amount, and those points are redeemed for prizes.<br><br>There are many ways in which to earn double, triple, sometimes even quintuple points on selected purchases, but it is ultimately up to the consumer to spend those earned points. Some opt for smaller rewards, such as $10 gas cards, $15 iTunes cards or $20 gift cards to various retailers. Others opt to hold onto their points for years – depending on their spending habits, this might earn them week-long all-inclusive trips to locations around the globe or even bigger, more valuable prizes.<br><br><https://blog.fivestars.com/rewards-that-work/><br><br>The reference describes authorizing a purchase transaction at the participating vendor web site without requiring any third party authentication and a physical manifestation of the user account. |

| US7177838 B1 | Five Stars Loyalty |
|---|---|
| if the user account contains electronic tokens having a value equal to or greater than the total price, permitting the user to purchase the selected subset of the products and services without requiring the user to disclose personal information to the vendor, and subtracting the total price from the user account, wherein the purchase transaction is not subject to a minimum processing fee. | This gives options to the customer – they can redeem their points at a high frequency for smaller items, or save them up and cash them in for the big, extravagant prizes. One of the better examples of this is credit card reward points. Although there are small variations between the major card companies, the basic premise remains the same – each dollar spent equates to a point amount, and those points are redeemed for prizes.<br><br>There are many ways in which to earn double, triple, sometimes even quintuple points on selected purchases, but it is ultimately up to the consumer to spend those earned points. Some opt for smaller rewards, such as $10 gas cards, $15 iTunes cards or $20 gift cards to various retailers. Others opt to hold onto their points for years – depending on their spending habits, this might earn them week-long all-inclusive trips to locations around the globe or even bigger, more valuable prizes.<br><br><https://blog.fivestars.com/rewards-that-work/><br><br>The reference describes if the user account contains electronic tokens having a value equal to or greater than the total price, permitting the user to purchase the selected subset of the products and services without requiring the user to disclose personal information to the vendor, and subtracting the total price from the user account, wherein the purchase transaction is not subject to a minimum processing fee. |

These allegations of infringement are preliminary and are therefore subject to change.

10. Five Stars has and continues to induce infringement. Five Stars has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., micropayment products

and services that facilitate purchases from a vendor at micropayment levels, wherein prices for the products and services are listed in units of electronic tokens) such as to cause infringement of one or more of claims 1–28 of the '838 patent, literally or under the doctrine of equivalents.  Moreover, Five Stars has known of the '838 patent and the technology underlying it from at least the date of issuance of the patent.

11. Five Stars has and continues to contributorily infringe. Five Stars has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., micropayment products and services that facilitate purchases from a vendor at micropayment levels, wherein prices for the products and services are listed in units of electronic tokens) and related services such as to cause infringement of one or more of claims 1–28 of the '838 patent, literally or under the doctrine of equivalents.  Moreover, Five Stars has known of the '838 patent and the technology underlying it from at least the date of issuance of the patent.

12. Five Stars has caused and will continue to cause AML damage by direct and indirect infringement of (including inducing infringement of) the claims of the '838 patent.

### IV.   JURY DEMAND

AML hereby requests a trial by jury on issues so triable by right.

### V.   PRAYER FOR RELIEF

WHEREFORE, AML prays for relief as follows:

a.   enter judgment that Defendant has infringed the claims of the '838 patent;

b.   award AML damages in an amount sufficient to compensate it for Defendant's infringement of the '838 patent in an amount no less than a reasonable royalty or lost

profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. award AML an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d. declare this case to be "exceptional" under 35 U.S.C. § 285 and award AML its attorneys' fees, expenses, and costs incurred in this action;

e. declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f. a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g. award AML such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey & Schwaller, LLP**

William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006

(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

***Attorneys for AML IP, LLC***